IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PAMELA HAFLEY,            )
                              )
        Plaintiff,          )
                              )
        v.                 )     Civil Action No.: 2:16cv612-WC
                              )
NANCY A. BERRYHILL,        )
Acting Commissioner of Social Security,  )
                              )
        Defendant.      )

# MEMORANDUM OPINION

## I.    INTRODUCTION

Pamela Hafley ("Plaintiff") filed applications for a period of disability and disability insurance benefits and for supplemental security income on April 5, 2013. Both applications alleged disability beginning on December 15, 2012. The applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 8). Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id.* It may contain both exertional and nonexertional limitations. *Id.* at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert

---

[3] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was fifty-one years old on the date of the hearing before the ALJ.  Tr. 45.
The highest grade Plaintiff completed was the seventh, and she did not obtain a General
Equivalency Development certificate.  Tr. 48.  Following the administrative hearing, and
employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged
in substantial gainful activity since December 15, 2012, the alleged onset date[.]"  Tr. 24.
At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments:
"scoliosis, left shoulder impingement syndrome, fibromyalgia, [and] trochanteric bursitis
with positive ANA titer."  Tr. 24.  At Step Three, the ALJ found that Plaintiff "does not
have an impairment or combination of impairments that meets or medically equals the
severity of one of the listed impairments[.]"  Tr. 25.  Next, the ALJ articulated Plaintiff's
RFC as follows:

> the claimant has the residual functional capacity to perform a range of
> "medium work[.]" . . . Specifically the claimant can lift and carry up to 50
> pounds occasionally and 25 pounds frequently.  She can stand or walk about
> 6 hours and can sit for at least 6 hours out of an 8-hour workday.  She can
> occasionally stoop, crouch, kneel, crawl, and climb—but not ladders, ropes,
> or scaffolding.  She can perform overhead reaching on no more than an
> occasional basis.  She can perform tasks not involving operation of vibrating
> tools or equipment.  She can perform tasks not involving exposure to
> workplace hazards such as unprotected heights and dangerous moving
> machinery.

Tr. 25.  At Step Four, having consulted with a VE, the ALJ concluded that, given her RFC,
Plaintiff "is capable of performing past relevant work as a convenience store assistant

5

manager and a housekeeper." Tr. 28. However, based upon the testimony of the VE, the ALJ further found, as an alternative finding under Step Five of the sequential analysis, that, based upon her age, education, work experience, transferable work skills, and RFC, Plaintiff is capable of performing the work demands of jobs existing in significant numbers in the national economy. Tr. 29. The ALJ identified several representative occupations, including hand packager, grocery worker, and sandwich maker. Tr. 29. Thus, the ALJ concluded that "although the claimant's additional limitations do not allow the claimant to perform the full range of medium work, . . . a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 203.27 and Rule 203.20." Tr. 30. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from December 15, 2012, through the date of this decision[.]" Tr. 30.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents three issues in her "Statement of the Issues," arguing that the ALJ's decision should be reversed because the ALJ failed to fully and fairly develop the record, erred in his RFC determination, and erred in his evaluation of Plaintiff's credibility. Pl.'s Br. (Doc. 13) at 1.

## V. DISCUSSION

### A. The ALJ's Development of the Record.

Plaintiff first argues that the ALJ failed in his "heightened" duty to develop the record. Doc. 13 at 5-8. Plaintiff asserts that the ALJ's duty to fully and fairly develop the record was heightened because, after executing a waiver of her right to counsel, she was

not represented by an attorney at the administrative hearing before the ALJ. *Id.* at 6. Plaintiff asserts that the record was particularly insufficient because, based upon Dr. Hirenkumar's observation in her June 24, 2013, consultative report, the ALJ "should have ordered an orthopedic consultative examination or called on the services of an orthopedic medical expert to testify." *Id.* at 7. The failure to do so prejudiced Plaintiff's case, she argues, because, while the ALJ "wholly adopted Dr. Hirenkumar's opinion in assessing" Plaintiff's RFC, Dr. Hirenkumar is an internist and Plaintiff's "impairments and resulting dysfunction are entirely orthopedic." *Id.* Thus, she maintains, the "absence of an examining orthopedist's report was a detrimental gap in the record" that caused Plaintiff's medical record to be incomplete and, therefore, the ALJ erred in failing to procure appropriate medical evidence related to Plaintiff's orthopedic impairments. *Id.* at 7-8.

Because Social Security proceedings are inquisitorial rather than adversarial, the ALJ has a duty to fully and fairly develop the record during administrative proceedings. *Cowart v. Schweiker*, 662 F.3d 731, 735 (11th Cir. 1981). Plaintiff asserts that, because she was not represented by an attorney, the ALJ's duty to do so in this case was "heightened." Doc. 13 at 6. However, the only case Plaintiff cites for this proposition, *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982), is inapposite. In that case, the ALJ failed to obtain a proper waiver of the claimant's right to an attorney because the prehearing notice of the claimant's right to counsel was inadequate and the ALJ further failed to cure the deficiency of the prehearing notice at the hearing. *Id.* at 828-29. Hence, because the

ALJ failed to obtain a valid waiver of the claimant's right to counsel, the Court of Appeals imposed a "special duty" on the ALJ to develop a full and fair record:

> When a claimant who has not waived his right to counsel represents himself in a hearing, the hearing examiner's obligation to develop a full and fair record rises to a special duty. This special duty requires, essentially, a record which shows that the claimant was not prejudiced by lack of counsel. In carrying out this duty, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.

*Id.* at 829 (quotations and citation omitted). *See also Cowart*, 662 F.3d at 735 (remarking that, "[w]here the right to representation has not been waived," the ALJ has a special duty to develop the record). Because these cases are confined to circumstances in which an ALJ has failed to procure a valid waiver of a claimant's right to counsel, "[b]y implication, where counsel has been waived, the special duty to develop the record does not take effect." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (citing *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (per curiam)). In other words, when the claimant has validly waived her right to counsel, the ALJ is not under any "special duty" to produce a record that "shows that the claimant was not prejudiced by lack of counsel." *Smith*, 677 F.2d at 829.

Here, even Plaintiff concedes that "an appropriate waiver of her right to counsel was obtained[.]" Doc. 13 at 7. *See also* Tr. 36-38 (ALJ's colloquy with Plaintiff describing her right to counsel, including limitations on the attorney's right to recover fees for representation). Hence, because the ALJ obtained a valid waiver of Plaintiff's right to counsel, his duty to fully and fairly develop the administrative record was not "heightened." *See, e.g., Robinson*, 235 F. App'x at 727 ("Although he was unrepresented at the hearing,

because Robinson waived counsel, the ALJ did not have a special duty to develop the record."). Accordingly, the court must determine simply whether the ALJ failed in his ordinary duty to fully and fairly develop the record.

Although the ALJ must fully and fairly develop the record, the claimant—even one who chooses to forego representation—"bears the burden of proving that [s]he is disabled, and consequently, [s]he is responsible for producing evidence in support of [her] claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). An ALJ's failure to develop the record warrants reversal only where "the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995). To demonstrate such prejudice, the claimant must show that "the ALJ did not have all of the relevant evidence before him in the record . . . or that the ALJ did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

Plaintiff argues that the ALJ failed to fully and fairly develop the record because, given Plaintiff's impairments, "[t]he ALJ should have ordered an orthopedic consultative examination or called on the services of an orthopedic medical expert to testify." Doc. 13 at 7. In support, Plaintiff points to Dr. Hirenkumar's report of her consultative examination. *Id.* In that report, in summarizing her functional assessment, in which she essentially concluded that Plaintiff can perform the exertional demands of medium work with some additional restrictions, Dr. Hirenkumar remarked that Plaintiff "needs to be evaluated by LS and thoracic and cervical spine for her significant scoliosis." Tr. 322.

According to Plaintiff, "'LS' likely stands for 'lumbosacral' and there is obvious missing text after 'needs to be evaluated by[.]'" Doc. 13 at 7 n.6. Plaintiff supposes that Dr. Hirenkumar "almost certainly meant to suggest that an orthopedic consultation be performed [in] light of [Plaintiff's] 'significant scoliosis' and related lumbrosacral, thoracic and cervical spines." *Id.*

"The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007). Here, the ALJ had sufficient evidence before him to make an informed decision about Plaintiff's limitations. Notwithstanding Plaintiff's speculation about what Dr. Hirenkumar meant to say in her report about Plaintiff's scoliosis and related limitations, the ALJ had substantial evidence before him concerning the diagnosis and treatment of Plaintiff's scoliosis. *See* Tr. 27 (discussing Plaintiff's treatment records from Montgomery Rheumatology Association, Health Star Chiropractic, Alabama Orthopedic Specialists, and River Region Health Center). This evidence included treatment records postdating Dr. Hirendumar's consultative examination. *See* Tr. 343 (discussing Plaintiff's pain medication and recommending that Plaintiff try muscle relaxers). In addition, even though Dr. Hirenkumar is not an orthopedic specialist, her consultative report notes Plaintiff's subjective complaints of pain related to scoliosis (Tr. 318) and includes her observation, upon examination of Plaintiff's spine, that Plaintiff "has thoracolumbar scoliosis, which is

significant on flexion of her dorsolumbar spine." Tr. 320. Dr. Hirenkumar further remarked that Plaintiff "has significant deformity of her dorsal spine with marked thoracolumbar scoliosis with winding of her right scapula when she has flexion of her thoracolumbar spine." Tr. 321. Dr. Hirenkumar incorporated limitations related to Plaintiff's scoliosis into her functional assessment: "Posturally, [Plaintiff] has difficulty bending, stooping, crouching, or climbing due to her scoliosis." Tr. 322. Hence, even if, as Plaintiff asserts, Dr. Hirenkumar intended to suggest that Plaintiff should be evaluated by an orthopedist for further treatment of her conditions, the court cannot conclude that there is such a gap in the record concerning Plaintiff's scoliosis or other orthopedic issues that the ALJ's failure to order an orthopedic consultation or obtain testimony from such a specialist constitutes a violation of the ALJ's duty to fully and fairly develop the record.

Furthermore, Plaintiff has not shown how she was prejudiced by the ALJ's failure to order an orthopedic consultation or obtain expert testimony. Plaintiff does not persuasively explain why Dr. Hirenkumar, as an internist, could not have reasonably examined Plaintiff and opined about her functional limitations related to any orthopedic impairments. Nor does she explain why the specific postural limitations opined by Dr. Hirenkumar should not have been credited by the ALJ or why an orthopedic specialist would have surmised a more restricted functional assessment. Thus, Plaintiff's argument appears to be more that she was prejudiced by Dr. Hirenkumar's less than disabling functional assessment, and her own decision to forego legal representation that could have subjected Dr. Hirenkumar's opinion to greater scrutiny, rather than any purported gap in

the evidentiary record. But, considering Plaintiff's ultimate burden of proving her disability, a non-favorable functional assessment that acknowledges and encompasses limitations perhaps outside of the expertise of the examining physician does not necessarily indicate a gap in the evidentiary record, much less actual prejudice, without some stronger showing of how Plaintiff was prejudiced.

The ALJ had sufficient evidence in the record before him to assess Plaintiff's RFC, including any limitations imposed by Plaintiff's orthopedic impairments. Moreover, the ALJ was under no "heightened" or "special" duty to develop the record due to Plaintiff's waiver of her right to counsel. Plaintiff, who bears the burden to both produce evidence and prove her disability, fails to show that there is any significant gap in the evidentiary record or that she was clearly prejudiced by the ALJ's failure to order an additional consultative examination or obtain expert medical testimony.[4] Accordingly, Plaintiff's claim that the ALJ's decision should be reversed due to the ALJ's purported failure to fully and fairly develop the record is without merit.

### B. The ALJ's RFC Findings.

Plaintiff next argues that the ALJ's decision should be reversed because the ALJ failed to provide an adequate basis for his RFC findings. In particular, she argues that the

---

[4] This conclusion is bolstered by Plaintiff's argument, in support of her second issue, that the ALJ failed to mention, evaluate, or discuss significant medical evidence in the record related to Plaintiff's pain and orthopedic ailments. *See* Doc. 13 at 11-13. According to Plaintiff, the ALJ "ignored much of the medical record that would indicate [Plaintiff] is far more limited than found by the ALJ." *Id.* at 12. Obviously, if the ALJ "ignored" significant medical evidence conflicting with his RFC findings, then it is difficult to accept the argument that there were significant gaps in the evidentiary record that caused prejudice to Plaintiff.

ALJ's decision to give Dr. Hirenkumar's opinion "substantial weight" is not supported by the record and that the ALJ purposely disregarded medical evidence that conflicted with his RFC findings.  Doc. 13 at 11-13.

In setting forth Plaintiff's RFC, the ALJ summarized Plaintiff's application documents and other self-reports (Tr. 26), her hearing testimony (Tr. 26), the record medical evidence concerning Plaintiff's treatment for her various impairments (Tr. 26-27), and the opinion evidence provided by Dr. Hirenkumar (Tr. 27).  The ALJ concluded that,

> [w]hile the evidence reveals the claimant has scoliosis, she is able to care for her personal needs, shop in stores, attend church and visit with her daughter. She testified that she has hobbies but she is unable to do them anymore because of financial constraints, not necessarily because she is not able. Furthermore, the claimant testified that she continues to work one day a week as a housekeeper.  Based upon the foregoing, the undersigned finds that the claimant has impairments that are severe in the programmatic sense, but that are not totally disabling.
>
> As for the opinion evidence, the undersigned has considered the opinion of Dr. Hirenkumar and gives it substantial weight, as it is consistent with the evidence as a whole.

Tr. 28.

Despite the ALJ's review and summary of essentially all of the evidence in the record, Plaintiff insists that the ALJ impermissibly "offered a 'broad statement'" of Plaintiff's RFC that is not supported by the record.  Doc. 13 at 9.  Plaintiff's argument is multi-faceted: she challenges the ALJ's reliance on Dr. Hirenkumar's opinion (*id.* at 9-11) and "failure to mention" the opinion of the state agency Single Decision Maker ("SDM") (*id.* at 11-12), while also charging the ALJ with having "ignored much of the medical

record that would indicate [Plaintiff] is far more limited than found by the ALJ" (*id.* at 12-13).  The undersigned will consider each point in turn.

Plaintiff first argues that the ALJ failed to adequately explain his decision to give Dr. Hirenkumar's opinion "substantial weight[,]" especially considering her contentions that Dr. Hirenkumar's opinion "was based on a cursory examination and limited review of evidence," "was not supported by her own examination findings," and is "inconsistent with common sense."  Doc. 13 at 10-11 (emphasis in original).  Having just summarized a global review of the record evidence, including Plaintiff's application documents, testimony, and the medical evidence, the ALJ plainly provided his reason for giving Dr. Hirenkumar's opinion "substantial weight."  The ALJ found it "consistent with the evidence as a whole." Tr. 28.

Plaintiff's argument fails to appreciably refute the ALJ's decision to afford Dr. Hirenkumar's opinion substantial weight.  First, the fact that, as a consultative examiner, Dr. Hirenkumar's examination may have been "cursory" is not availing to Plaintiff. Because they are performed by non-treating, examining physicians, consultative examinations are, by their nature, somewhat cursory.  Nevertheless, consultative examinations are frequently ordered by the Social Security Administration to supplement or bring clarity to the medical record.  Indeed, as discussed previously, Plaintiff faults the ALJ for failing to order a consultative orthopedic examination in this case.  Plaintiff does not dispute that Dr. Hirenkumar conducted the examination reflected in her report, or that Dr. Hirenkumar adequately reviewed pertinent records in conjunction with her

examination.  Indeed, Plaintiff concedes that Dr. Hirenkumar reviewed much of the very medical evidence that she later faults the ALJ for failing to adequately discuss in his opinion. *Compare* Doc. 13 at 10 (acknowledging Dr. Hirenkumar's review of "Dr. Edward Davis's note from July 2009, and Dr. Fallahi's notes dated October 2011") *with id.* at 12-13 (discussing ALJ's failure to discuss discrete points of Dr. Fallahi's October 2011 note and Dr. Davis's July 2009 notes).  As such, Plaintiff's argument that Dr. Hirenkumar's examination was too cursory to be entitled to the weight afforded by the ALJ is without merit.

Likewise, Plaintiff's related contention that Dr. Hirenkumar's opinion should not have been credited by the ALJ because it "was <u>not</u> supported by her own examination findings" is unavailing.  Doc. 13 at 10, 11.  Tellingly, the only specific argument she musters in support of this charge is that "Dr. Hirenkumar noted 'significant' thoracolumbar scoliosis with scapular deformity with 'probably some compromise on her pulmonary volume.'"  *Id.* at 10-11 (quoting Tr. 318).  But Plaintiff fails to explain why Dr. Hirenkumar's finding of "significant" scoliosis and "some compromise on her pulmonary volume" renders her opinion unsupported by her own examination, especially where other findings by Dr. Hirenkumar ostensibly support her opinion, including that, other than some restrictions in her range of motion due to scoliosis, Plaintiff presented with an essentially unremarkable physical examination, demonstrated full motor strength in all of her extremities, and, furthermore, Dr. Hirenkumar found "[n]o evidence of any palpable muscle spasm, localized tenderness or crepitation."  Tr. 319-321.  In any event, Plaintiff

fails to proffer any medical evidence tending to show that Dr. Hirenkumar's opinion is somehow inconsistent with her examination, and the court is not inclined to substitute Plaintiff's unsupported opinion for the medical judgment of Dr. Hirenkumar.

Similarly, Plaintiff appears to again substitute her own judgment for the professional medical opinion of Dr. Hirenkumar when she argues that Dr. Hirenkumar's opinion "is inconsistent with common sense." Doc. 13 at 11. Here, she maintains simply that, given her weight, she plainly is not able to lift or carry "42% of her body weight" in a manner consistent with Dr. Hirenkumar's opinion that Plaintiff can perform the lifting and carrying requirements of medium work. *Id.* She also argues, without citation to any part of the record, that "Dr. Hirenkumar's opinion is inconsistent with other examining source findings and the radiology reports in the record." *Id.* Plaintiff does not explain how "common sense" dictates that a person cannot "occasionally" lift or carry up to 42% of their body weight, especially where a physician—presumably possessing both common sense and professional medical judgment, and having actually conducted a physical examination of the person—asserts that they can do so. Nor can the court accept that Dr. Hirenkumar's opinion (regarding lifting? or generally?) "is inconsistent with other examining source findings and the radiology reports in the record" where Plaintiff does not bother to cite, specifically, to which other "examining source findings" and "radiology reports" she is referring, much less explain how they are inconsistent. As such, Plaintiff

fails to show how the ALJ's reliance on Dr. Hirenkumar's opinion constitutes reversible error.

Plaintiff next faults the ALJ for ignoring or failing to mention various pieces of evidence, including the report of the State Agency SDM and portions of medical records she finds at odds with the ALJ's RFC finding. As to the SDM's report, Plaintiff notes that, based upon the evidence reviewed by the SDM, the SDM found that Plaintiff can perform "light exertional activity." Doc. 13 at 11. Plaintiff also correctly notes that the ALJ does not appear to address this opinion. *Id.* Plaintiff thus argues that the ALJ was "required to consider and evaluate" this opinion, and that his failure to mention it "precluded an adequate evaluation of it." *Id.*

Plaintiff concedes that a decision of an SDM is not a medical opinion. *Id.* at 11-12, n.10. *See also Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871-72 (11th Cir. 2012) (remarking that an SDM "with no apparent medical credential" was "not an acceptable medical source[,]" and finding reversible error where the "ALJ labored under the mistaken belief" that the SDM's RFC finding was authored by a physician). Nevertheless, she maintains that the ALJ was required to treat the SDM's opinion in accordance with Social Security Regulations' dictates regarding non-examining source opinions. Plaintiff does not cite any instance in which an ALJ's failure to adequately discuss the non-medical source opinion of an SDM was found to constitute reversible error. Nor is the undersigned aware of any such authority. Moreover, Plaintiff fails to explain how the ALJ's failure to discuss this non-medical opinion could constitute anything other than harmless error given

17

the SDM's ultimate conclusion that, notwithstanding the more restrictive RFC opined by the SDM, "all potentially applicable Medical-Vocational Guidelines would direct a finding of 'not disabled' given the individual's age, education, and RFC." Tr. 78. The ALJ did not reversibly err in failing to adequately discuss the non-medical opinion of the SDM.

Plaintiff next argues that the ALJ "ignored much of the medical record that would indicate [Plaintiff] is far more limited than found by the ALJ." Doc. 13 at 12. In support she cites to several medical records, including Dr. Fallahi's notes from October 2011, Dr. Davis's notes from July 2009 and March 2013, and notes of chiropractic treatment Plaintiff received in December 2012 and February 2013. *Id.* at 12-13. It is evident that the ALJ reviewed these records, *see* Tr. 26-27 (discussing notes from Dr. Fallahi, Dr. Davis, and Health Star Chiropractic), but Plaintiff nevertheless faults the ALJ for "leaving out" various portions of the notes because, according to Plaintiff, they paint a more severe picture of Plaintiff's impairments. Of course, the ALJ is not required to "specifically refer to every piece of evidence in his decision," *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), much less painstakingly discuss every discrete portion of those records he does review and discuss. At bottom, the ALJ's review of the evidence must only be sufficiently exacting to show that "the ALJ considered [Plaintiff's] medical condition as a whole." *Id.* (quotation and citation omitted).

Here, the ALJ's decision clears that hurdle. The ALJ readily acknowledged numerous medical records showing Plaintiff's diagnoses with various impairments

including, especially, scoliosis and corroborating radiological results. Tr. 26-27.[5] In addition, most of the medical records of Dr. Fallahi and Dr. Davis that Plaintiff faults the ALJ for failing to adequately discuss in his opinion were reviewed by the consultative examiner, Dr. Hirenkumar. *See* Tr. 318. Because those records informed Dr. Hirenkumar's opinion, which the ALJ gave substantial weight, and because the ALJ reviewed the subject records in his own right, the court does not find any reversible error with respect to the adequacy of the ALJ's review of the medical evidence.

Ultimately, the undersigned must determine whether the ALJ's RFC determination is supported by substantial evidence. As discussed previously, substantial evidence is more than a scintilla but less than a preponderance of the evidence. Here, the ALJ unquestionably cited substantial evidence in support of his RFC determination, including those portions of the medical records that Plaintiff does not even argue do not support the ALJ's decision and, particularly, the opinion of the consultative examiner. As such, the ALJ did not reversibly err in his RFC determination.

## C. The ALJ's evaluation of Plaintiff's credibility.

Plaintiff's final claim is that the ALJ failed to adequately explain his decision to discredit her subjective testimony about disabling pain. She argues that the ALJ "never evaluated [her] credibility under the Regulatory factors" of 20 C.F.R. § 404.1529(c)(3).

---

[5] Indeed, Plaintiff erroneously charges the ALJ with having "left out" Dr. Fallahi's October 2011 note that "Neck ex-rays showed 'advanced' osteoarthritis." Doc. 12 at 12. The ALJ plainly noted this in his decision when discussing x-rays taken for Dr. Fallahi: "the neck showed advanced osteoarthritis of the subaxial area and apophyseal junctions." Tr. 27.

Doc. 13 at 15.  Plaintiff does not clarify which of the factors she believes, had the ALJ adequately considered them, would have led to a different outcome.

Where a claimant attempts to prove their disability by, in part, offering subjective testimony about pain, the courts in this Circuit require "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).  The Regulatory factors alluded to by Plaintiff require the ALJ to evaluate the claimant's credibility in light of evidence about the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of the claimant's medications; treatment, other than medications, that the claimant is receiving for relief of pain or other symptoms; any other measure employed by the claimant to relieve pain; and any other factors concerning functional limitations and restrictions due to pain or other symptoms.  20 C.F.R. § 404.1529(c)(3).  Ultimately, "credibility determinations are the province of the ALJ, and [courts] will not disturb a clearly articulated credibility finding supported by substantial evidence." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citations omitted).

In this case, after summarizing Plaintiff's application documents, function reports, testimony, and the medical evidence of record, the ALJ found that Plaintiff's "medically determinable impairments could possibly be expected to cause to some degree the

symptoms alleged; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not considered entirely credible for the reasons explained in this decision." Tr. 28. The reasons the ALJ specifically articulated include the following: Plaintiff's February 2, 2013, report to her chiropractor that she was doing better with pain and improving since her last visit (*See* Tr. 297); Dr. Hirenkumar's report and observation concerning Plaintiff's impairments, symptoms, and functional abilities (*See* Tr. 318-22); Plaintiff's function report showing that she generally is able to "care for her personal needs, shop in stores, attend church and visit with her daughter"[6] (*See* Tr. 182-89); Plaintiff's testimony that she does not pursue hobbies as much as she once did "because of financial constraints, not necessarily because she is not able" (*See* Tr. 62); and Plaintiff's testimony that she "continues to work one day a week as a housekeeper" (*See* Tr. 46-47). Tr. 28. Based upon all of this evidence, the ALJ concluded that Plaintiff "has impairments that are severe in the programmatic sense, but that are not totally disabling." Tr. 28.

Plaintiff maintains that the ALJ found her subjective testimony incredible only because she reported working one day a week and is able to care for her personal needs, and insists that the ALJ reversibly erred in purportedly failing to evaluate her credibility

---

[6]   In her Function Report, Plaintiff reported that, *inter alia*, she regularly does the following: showers and dresses herself, tends to her animals and plants, cleans house (including sweeping porches, taking out trash, cleaning the kitchen appliances and wiping down cabinets, and cleaning outdoor furniture), does laundry, runs errands, walks her dog, fixes light meals, looks after her grandchildren when they miss school due to illness, shops for food and personal items as needed, and attends church and Bible study weekly. Tr. 182-89. Indeed, Plaintiff reported that she sometimes performs housework "all day." Tr. 184.

under the regulatory factors discussed previously.  Doc. 13 at 15.  However, in reviewing the record evidence, the ALJ explicitly addressed several of the factors set forth in the regulatory factors Plaintiff charges him with having ignored.  For instance, the ALJ plainly took into account evidence about Plaintiff's daily activities and the efficacy of the treatment, including medications, that she received to address her complaints of pain.  Tr. 26-27.  Furthermore, as set forth above, the ALJ plainly relied upon more than just Plaintiff's abilities to care for her personal needs and work once a week in finding her testimony less than fully credible.  While Plaintiff faults the ALJ for failing to consider her credibility pursuant to the regulatory factors, she wholly fails to point to salient evidence tending to show that the ALJ's purported failure to consider the various factors set out in the regulations caused him to make a credibility determination that was not supported by substantial evidence.  In other words, it appears that Plaintiff's claim is concerned more with whether the ALJ formalistically listed the regulatory factors in his opinion rather than whether he actually failed to consider them.

In any event, the court finds that, as detailed in the above summary of the ALJ's credibility finding, there is substantial evidence in support of the ALJ's decision to find Plaintiff's subjective testimony about her pain less than fully credible.  Because such substantial evidence exists, this court may not disturb his credibility determination.

*Mitchell*, 771 F.3d at 782.  Accordingly, Plaintiff's claim that the ALJ reversibly erred in his credibility determination is without merit.

## VI.    CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 24th day of October, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE